## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES KIRK MITCHELL, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs,** | **NO. 10-CV-001472** |
| **vs.** | **SECTION "L"** |
| **BP, PLC; BP EXPLORATION & PRODUCTION, INC.; BP PRODUCTS NORTH AMERICA, INC.; BP AMERICA, INC.; BP CORPORATION NORTH AMERICA, INC.; BP COMPANY NORTH AMERICA, INC.; TRANSOCEAN, LTD.; TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; HALLIBURTON ENERGY SERVICES, INC.; MITSUI OIL EXPLORATION CO. LTD; MOEX OFFSHORE 2007, LLC; ANADARKO PETROLEUM CORP.; CAMERON INTERNATIONAL CORPORATION, f/k/a COOPER CAMERON CORPORATION; AND M-1, LLC, a/k/a SWACO,** | **JUDGE ELDON E. FALLON** |
| | **DIVISION "1"** |
| | **MAGISTRATE JUDGE SALLY SHUSHAN** |
| **Defendants.** | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO BP DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING MDL TRANSFER

Plaintiffs James Kirk Mitchell, *et al.*, respectfully submit this memorandum in opposition to the motion of defendants BP America Inc., BP Exploration & Production Inc. and BP Products North America Inc. (collectively, "BP Defendants") to stay proceedings pending transfer by the Judicial Panel on Multidistrict Litigation pursuant to

28 U.S.C. § 1407.  The motion should be denied because the potential prejudice to the plaintiffs would be severe if a stay were imposed in view of the ongoing economic losses they have sustained and will continue to sustain as a result of the ongoing Gulf of Mexico oil spill calamity.  Defendants will not be prejudiced by doing what they must do at this preliminary litigation stage, *i.e.*, respond to plaintiffs' allegations in the Complaint, and at this nascent stage of the litigation the risk of inconsistent discovery or merits adjudications is minimal.

**FACTUAL AND PROCEDURAL BACKGROUND**

On April 20, 2010, the *Deepwater Horizon*, an offshore oil rig located about 50 miles south of the Louisiana coast in the Gulf of Mexico, exploded and caught fire.  The rig burned for two days before sinking, taking with it a mile-long riser pipe carrying oil to the surface from the seafloor.  As the *Deepwater Horizon* sank, it broke off the riser, leaving the pipe leaking oil out of its now-opened end as well as through two breaks along its length.

Although the investigation is ongoing, the immediate cause of the explosions on the rig appears to have been the ascendance of bulges of methane gas through the riser. The methane gas erupted as it reached the surface of the rig.  Several events leading up to the explosions could have caused or exacerbated the release of methane gas, including faulty materials and/or procedures used in the cementing process for the well, removal of mud from the riser, leaks from or other defects relating to the blowout preventer valve ("BOP") at the wellhead and improper well depth.  To make matters worse, the BOP failed to seal the wellhead as it should have after the explosions occurred, leaving the well spewing oil into the Gulf waters.

To date, as a result of the catastrophic explosions, fires and sinking of the *Deepwater Horizon*, crude oil has been leaking from the wellhead and broken riser drilled by the rig at a rate estimated between 12,000 to 19,000 barrels (504,000 to 798,000 gallons) of oil per day, spreading into a widening slick of oil above and below the Gulf's surface. The growing, fast-moving slick is large enough to be visible from outer space and spreading with the wind and currents towards the Louisiana, Mississippi, Alabama, Florida and Texas coastlines. To date, millions of gallons of oil have spilled into the Gulf and oil has reached the southeast Louisiana coast. In fact, the U.S. government has determined that the Gulf of Mexico oil spill caused by the sinking of the *Deepwater Horizon* is now the worst oil spill in U.S. history.

The spilled oil has already caused damage to the Gulf of Mexico's Louisiana marine, coastal and estuarine environments, which are relied upon by plaintiffs, who are commercial fishermen, to earn their livelihoods. In fact, on May 19, 2010, heavy, black oil hit Louisiana wetlands and oil continues to impact the coast and coastal waters. With the wellhead unabatedly spewing hundreds of thousands of gallons of oil per day into the waters near Louisiana, plaintiffs are suffering and will continue to suffer serious economic losses. The U.S. government has closed more than 45,000 square miles of the Gulf to commercial fishing, including the waters south of Louisiana where plaintiffs earn their living, and the waters will likely be closed to them for months, and potentially years, to come. The fishing season for plaintiffs, lasting from April to October, is essentially ruined by the pollution and closure of waters.

To date, more than 130 actions involving the BP oil spill in the Gulf have been filed. Various motions for transfer of the cases for consolidated or coordinated pretrial

proceedings have been filed with the Judicial Panel on Multidistrict Litigation ("Panel") pursuant to 28 U.S.C. § 1407 (MDL No. 2179), and the Panel is expected to hear oral argument on the motions on July 29, 2010, in Boise, Idaho.

## ARGUMENT

Although the Court has discretion to stay proceedings pending determination of transfer under 28 U.S.C. § 1407, *Falgoust v. Microsoft Corp.*, No. 11-1779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997), the Court must "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  A district judge should not automatically stay discovery, postpone rulings on pending motions or generally suspend further rulings merely because a party has moved the Panel for § 1407 transfer.   *Rivers*, 980 F. Supp. at 1360; *see also Boudin v. ATM Holdings, Inc.*, No. 07-0018, 2007 WL 1841066, *1 (S.D. Ala. June 27, 2007) ("[a] stay pending transfer to MDL proceedings is not automatic"); *Toppins v. 3M Co.*, No. 4:05CV01356, 2006 WL 12993, *1 (E.D. Mo. Jan. 3, 2006) ("[a] court need not automatically stay a case merely because a party has moved the MDL for transfer and consolidation"); *Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985, 2010 WL 147143, *2 (M.D. Fla. Jan. 11, 2010) ("a district court should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' [*sic*] motion to the MDL panel for transfer and consolidation"); *Manual For Complex Litigation* § 20.131 (4th ed.) (same).

Indeed, Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides that the pendency of a motion for § 1407 transfer before the Panel "does not affect or suspend orders and pretrial proceedings in the district court in which

the action is pending." J.P.M.L. R. P. 1.5. Thus, courts have held that "[t]he mere pendency of a motion to transfer before the Multidistrict Panel does not affect or suspend the jurisdiction of the transferor court, or limit its ability to act on matters properly before it." *General Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir. 1979); *see also In re Four Seasons Secs. Laws Litig.*, 362 F. Supp. 574, 575 n.2 (J.P.M.L. 1973) (mere pendency of a motion to transfer before Panel does not affect or suspend orders and discovery proceedings in transferor district court and does not in any way limit the jurisdiction of that court to rule on matters properly presented to it for decision); *In re Air Crash Disaster at Paris, France, on Mar. 3, 1974*, 376 F. Supp. 887, 888 (J.P.M.L. 1974) ("the mere pendency of a motion before the Panel does not affect or suspend orders and discovery proceedings in the transferor district court"). In addition, the Panel has observed that stay orders are not favored:

> The Panel's experience indicates that the use of stay orders by the district courts, particularly in the area of discovery, is usually undesirable. Any discovery obtained prior to the Panel's decision will benefit the parties to the action if transfer is denied and will presumably be made available to all other parties if transfer is ordered.

*In re Penn Central Secs. Litig.*, 333 F. Supp. 382, 384 (J.P.M.L. 1971).

Courts consider the following factors to determine whether a stay of proceedings is appropriate: (1) the hardship and inequity on the moving party without a stay; (2) the prejudice the non-moving party will suffer if a stay is granted; and (3) judicial economy. *See Louisiana Stadium & Exposition Dist. v. Financial Guaranty Ins. Co.*, No. 09-235, 2009 WL 926982, at *1 (E.D. La. Apr. 2, 2009); *Falgoust v. Microsoft Corp.*, No. 11-1779, 2000 WL 462919, at *2 (E.D. La. Apr. 19, 2000); *Rivers*, 980 F. Supp. 1360. Considering the urgency of the calamity in the Gulf of Mexico and the nascent

stage of the litigation, coupled with the daily harm being suffered by the plaintiffs, these factors balance in favor of denial of the motion for a stay.

The Panel in MDL No. 2179 is expected to hear argument on motions for transfer pursuant to 28 U.S.C. § 1407 on July 29, 2010, approximately 65 days from now.  No compelling reason exists why this action cannot move forward with preliminary steps in the interim.  Regardless of whether and where the MDL Panel ultimately transfers this action for consolidated and coordinated pretrial proceedings, defendants will need to file answers or responsive pleadings.  Should any of the defendants see fit to file Rule 12(b) motions, those motions will need to be briefed, which will take some time.  Entering a stay at this juncture and under these circumstances would not rescue defendants from these litigation obligations, and, as a result, they will not suffer any hardship or risk of inconsistent adjudications because they must answer the Complaint anyway.  Further, the likelihood of adjudication of any *merits* issues prior to late July, when the Panel is expected to hear the motions to transfer, appears slim at this early stage of the proceedings.  Contrary to defendants' argument, a stay would actually unduly benefit defendants, while prejudicing plaintiffs by unfair delay, by affording defendants a two-month reprieve after service of process before being required to answer the allegations brought by the plaintiffs in the Complaint.  Such delay is unwarranted.

By contrast, it would benefit the parties and the transferee court to have a better picture of the issues joined and the defenses raised, with briefing of any threshold legal issues already completed, at the time of any transfer order by the Panel. Judge Steele has reached similar conclusions and consequently denied a motion to stay in a related action pending in the Southern District of Alabama.  *See* accompanying Affidavit of Jeffrey A.

Breit ("Breit Aff."), Ex. A.  Judge DuBose of the same district has also denied these same defendants' motions to stay proceedings in related actions.  Breit Aff., Ex. B.  Similarly, Judge Hughes of the Southern District of Texas has denied defendants' motion to stay proceedings in a related action.  Breit Aff., Ex. C.[1]

As for plaintiffs, their livelihoods have been severely impacted by the Gulf oil spill disaster through the loss of daily income from their commercial fishing, and they will continue to be adversely impacted for months, if not years, to come because of the unprecedented pollution and closing of Gulf waters on account of the oil disaster.  Any delay in proceedings and rulings by the Court would therefore unduly prejudice plaintiffs.  Defendants claim that the claims process established by BP pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.* ("OPA 90"), will "prevent plaintiffs from suffering any harm or prejudice during the short stay requested."  BP Brief, at 7, ¶ 13.  However, BP has not indicated how long the interim payments will continue and the claims process under OPA 90 merely provides interim, short-term damages representing less than the full amount of damages to which plaintiffs will ultimately be entitled, 33 U.S.C. § 2713(d).  Thus, plaintiffs will be prejudiced even if they receive interim, modest funds through the claims process.

In addition, no discovery has been served on defendants.  Moreover, the Court has granted certain BP defendants an extension until July 1, 2010, to respond to the Complaint, and other BP defendants have similarly moved for an extension.  No discovery can be obtained without first conducting a discovery planning conference

---

[1]   *But see* Breit Aff., Ex. D, *Order and Reasons* of Judge Feldman of the Eastern District of Louisiana (granting motion to stay in a related action because defendants face burden of litigating in multiple jurisdictions and "there is a grave potential for conflicting discovery orders, " "mock[ing] an efficient and orderly judicial system"); Breit Aff., Ex. E, Stay Orders entered in the Western District of Louisiana and the Northern District of Florida.

among counsel pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  Thus, any risk of inconsistent discovery orders is remote at best.  To the extent initial disclosures are provided pursuant to Rule 26(a), those disclosures would benefit all parties whether § 1407 transfer is accomplished.  Any initial disclosures obtained in this action would presumably be shared with other parties if and when transfer occurs.

Thus, defendants will not endure any undue hardship or inequity without a stay; whereas plaintiffs will be severely prejudiced by delay from a stay.  Judicial economy will not be promoted by a stay either because these early deadlines relate principally to exchanges among the parties.  Thus, based on these factors, the motion to stay should be denied.

## CONCLUSION

For the reasons set forth in this memorandum, plaintiffs respectfully request that this Court deny the BP Defendants' motion for a stay of proceedings pending transfer by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407.

Dated:  May 28, 2010

/s/ Jeffrey A. Breit
Jeffrey A. Breit
Breit Drescher & Imprevento
999 Waterside Drive
Norfolk , Virginia 23510
Tel.:  757-670-3888
Fax:  757-670-3895
E-mail:  jbreit@bdbmail.com
Web Site:  www.breitdrescher.com

Louisiana Bar # 03451

Robert J. Gordon

Robin L. Greenwald
Curt D. Marshall
Weitz & Luxenberg, P.C.
700 Broadway
New York, New York 10003
Tel.:  (212) 558-5500
Fax:  (212) 344-5461
Email: rgrodon@weitzlux.com
Email:  rgreenwald@weitzlux.com
Email:  cmarshall@weitzlux.com

***Attorneys for Plaintiffs***